O

# United States District Court
# Central District of California

| | |
|---|---|
| VIDA ENTERPRISE CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANGELINA SWAN COLLECTION, INC.,<br><br>　　　　　Defendant. | Case № 2:22-cv-00915-ODW (JCx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES [54]** |

## I.　　INTRODUCTION

Plaintiff Vida Enterprise Corporation sued Angelina Swan Collection, Inc. ("ASC"), alleging that ASC infringed Vida's ANGELINA and SWAN trademarks by selling geles, a type of headwear, with the ANGELINA SWANN mark. (Compl., ECF No. 1.)  The Court granted summary judgment and dismissed the case in favor of ASC, determining that there was "no appreciable chance" of consumer confusion. (Order Granting Mot. Summ. J. ("MSJ Order") 11, ECF No. 50.)  ASC now moves for attorneys' fees. (Mot. Att'ys' Fees ("Motion" or "Mot."), ECF No. 54.)  For the reasons discussed below, the Court **GRANTS** ASC's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Vida is an apparel company that owns the trademarks ANGELINA and SWAN, which it uses in connection with the sale of hats, socks, and other clothing items. (Compl. ¶ 6.)[2] Vida markets its apparel through brick-and-mortar retail locations such as Wal-Mart and through online channels, including Amazon.com and its own websites, vida-us.com, and Angelina.shop. (*Id.* ¶¶ 6–7.) Vida sells hats and beanies with the ANGELINA mark for about $23 for a six-pack, and it sells underwear and socks with the SWAN mark for about $18 for a twelve-pack. (MSJ Order 3.) ASC, by contrast, sells one type of item—the gele, which is a Yoruba (Nigerian) word for "head-tie" or "head wrap." (*Id.* at 4.) ASC sells geles with its ANGELINA SWANN mark for between $140 and $520. (*Id.*)

On February 9, 2022, Vida brought claims against ASC for: (1) federal trademark infringement; (2) false designation of origin; (3) common law trademark infringement; and (4) unfair competition under California state law. (Compl. 9–14.) ASC moved for summary judgment, and the Court granted ASC's motion, dismissing Vida's claims with prejudice. (MSJ Order 23.)

In describing why there was no genuine dispute about customer confusion, the Court explained that, "[t]o win its suit, Vida must ultimately prove that a customer purchasing an ANGELINA SWANN-branded gele for over $140 from ASC's own website is likely to think that the gele they are purchasing is actually sold by Vida." (MSJ Order 11.) The Court observed:

> It does not take a terribly detailed legal analysis to conclude that there is simply no appreciable chance that a customer buying an ANGELINA SWANN gele directly from ASC for hundreds of dollars might, at the time of the purchase, mistakenly think they are purchasing the gele from the same company that sells hats and scarves under the ANGELINA

[2] In the Complaint, Plaintiff re-starts the numbering of the paragraphs in the "Causes of Action" section. In this Order, citations to paragraph numbers, where used, are to those in the first section of the Complaint, up to paragraph 39 on page eight.

|   |   |
|---|---|
| 1 | mark and underwear and socks under the SWAN mark in big-box retail stores and on Amazon.com for a few dollars apiece. |

(*Id.*) The Court ultimately found that the relevant factors, "on the whole, weigh so strongly in ASC's favor that the Court concludes that no reasonable jury could find for Vida on the consumer confusion issue." (*Id.* at 23.) The Court accordingly granted ASC's motion for summary judgment and dismissed Vida's complaint with prejudice. (*Id.*)

On April 26, 2023, ASC filed the present Motion, requesting a total of $61,607.00 in attorneys' fees. (Mot. 9.) The Motion is fully briefed. (Opp'n Mot. Att'ys' Fees ("Opp'n"), ECF No. 56; Reply ISO Mot. Att'ys' Fees, ECF No. 57.)

### III. LEGAL STANDARD

The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Whether a case is "exceptional" is left to the discretion of the district court "considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180–81 (9th Cir. 2016) (en banc). An "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. Courts also consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *SunEarth*, 839 F.3d at 1181.

### IV. DISCUSSION

ASC is the prevailing party in this case. The principal issues are (1) whether this case is exceptional and (2) whether ASC's fee request is reasonable.

### A. Whether the Case is Exceptional

The first issue is whether the case is "exceptional" under 15 U.S.C. § 1117(a). Based on both the low substantive strength of Vida's litigation position and certain unreasonable aspects of Vida's litigation conduct, the Court answers this question in the affirmative.

### 1. Substantive Strength of Litigation Position

First, the case is exceptional based on the low substantive strength of Vida's litigation position. "A case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 572 U.S. at 555. Courts in the Central District of California have found that when "no reasonable litigant could realistically expect success on the merits," the case qualifies as exceptional. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. 8:12-cv-00329-AG (JPRx), 2015 WL 12733442, at *2 (C.D. Cal. Mar. 10, 2015) (quoting *GP Indus. Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007)).

Here, Vida's claims were "exceptionally meritless" so as to support an award of attorneys' fees. In the MSJ Order, the Court observed that it did "not take a terribly detailed legal analysis" to conclude that there was simply no appreciable chance of confusion and therefore no cognizable trademark claim. (MSJ Order 11.) Reinforcing this conclusion is the fact that Vida's presentation of evidence in opposition to the MSJ was threadbare. Vida did not present consumer surveys, nor did it submit any evidence of actual customer confusion. Instead, Vida submitted a hodgepodge of unauthenticated marketing materials and reiterated its facially deficient theories of trademark infringement. The outcome of ASC's MSJ was not a close call, and given the weakness of Vida's showing, the Court readily concludes that a reasonable litigant in Vida's shoes could not have expected success on the merits.

For these reasons, the objective lack of merit is a basis on which the Court can properly find this case to be exceptional.

### 2. *Unreasonable Litigation Conduct*

This case is also exceptional based on the unreasonableness of Vida's litigation conduct. District courts in California have held that "a case may be exceptional based on the unreasonable manner in which it was litigated." *Digit. Reg of Tex., LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2015 WL 1026226, at *9 (N.D. Cal. Mar. 9, 2015) (quoting *Octane Fitness*, 572 U.S. at 554). Conduct need not arise to the level of sanctionable to be considered unreasonable. *Octane Fitness*, 572 U.S. at 555.

Here, ASC argues Vida litigated unreasonably by (1) ignoring the Court's order to conduct mediation and (2) failing to fulfill its discovery obligations. (Mot. 2.) ASC's arguments are well taken.

First, over the course of several months, ASC sent Vida seventeen emails regarding the scheduling of a Court ordered mediation, receiving only three emails from Vida in response. (Decl. Ben T. Lila ISO Mot. ("Lila Decl.") Ex. 3 ("Mediation Emails"), ECF No. 54-1.)[3] On the whole, the Mediation Emails indicate that Vida did not act with diligence in attempting to schedule mediation. This supports a finding that Vida's litigation conduct was unreasonable.

Second, the record indicates that in multiple instances Vida failed to fulfill its discovery obligations. In May 2022, ASC propounded document discovery requests on Vida. (Decl. Gordon E. Gray ISO Mot. ("Gray Decl.") ¶ 4, ECF No. 54-2.) By December 2022, Vida had not produced the documents ASC requested. (*Id.*) ASC moved to compel production, and the Court granted the motion, ordering Vida to produce the requested documents by January 23, 2023. (Order Granting Def.'s Mot. Compel ("Discovery Order") 2, ECF No. 31.) Vida subsequently produced some documents, but ASC contended that Vida violated the Court's Discovery Order by not producing sufficient documents. (Gray Decl. ¶ 5.) Only after ASC threatened to move for discovery sanctions did Vida supply the unproduced material. (*Id.* ¶ 5,

---

[3] All Exhibits to the Lila Declaration are located at ECF No. 54-1.

Exs. 5 ("Meet and Confer Email"), 6 ("Suppl. Resps.").) [4] Vida's discovery conduct—first in not producing relevant documents and then in producing relevant documents in an untimely manner following the Court's order compelling production—supports a finding that its litigation conduct was, on the whole, unreasonable.

Moreover, on December 21, 2022, ASC served Vida with a Federal Rule of Civil Procedure ("Rule") 30(b)(6) notice of deposition, setting January 11, 2023, as the deposition date. (Lila Decl. Ex. 7 ("Notice Rule 30(b)(6) Dep.").) Vida did not produce its witness on January 11 and subsequently failed to produce its witness for deposition prior to the January 23, 2023 discovery cut-off. (Lila Decl. ¶ 11.) District courts have found that a party's "unwillingness to cooperate with [an adversary] to reschedule [a] deposition strongly suggests harassment" and "reinforces the conclusion" that the opponent litigated the case in an unreasonable manner. *Cambrian Sci. Corp. v. Cox Commc'ns, Inc.*, 79 F. Supp. 3d 1111, 1119 (C.D. Cal. 2015.) This Court similarly finds that Vida's failure to produce a Rule 30(b)(6) deponent "reinforces the conclusion" that Vida's litigation conduct was unreasonable. *Id.*

In summary, considering the facts and the history of this case, the Court finds this case to be exceptional, both due to the exceptional meritlessness of Vida's claims and the unreasonable manner in which Vida litigated the case. ASC is therefore entitled to attorneys' fees under the Lanham Act. *See* 15 U.S.C. § 1117(a).

B. **Whether the Attorney Fee Request is Reasonable**

Next, the Court considers whether ASC's request for $61,607.00 in attorneys' fees is reasonable. The determination of whether an attorney fee request is reasonable is committed to the discretion of the district court and is guided primarily by the lodestar calculation. *Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-cv-07098-AB (SHx), 2015 WL 1746484, at *4 (C.D. Cal. Mar. 24, 2015). Courts calculate the lodestar "by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.

---

[4] All Exhibits to the Gray Declaration are located at ECF No. 54-2.

1993).

### 1. Reasonable Hourly Rates

"An attorney's rate is 'reasonable' for the purpose of a fee award if it comports with 'prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.'" *Perfect 10*, 2015 WL 1746484, at *5 (quoting *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009)). To determine whether a rate falls within the scope of "prevailing market rates," courts consider rates changed by "lawyers of reasonably comparable skill, experience and reputation" "engaged in equally complex [f]ederal litigation" "irrespective of practice area." *Id.* The party seeking attorneys' fees may satisfy its burden to show that the proposed hourly rate is reasonable by submitting affidavits of counsel, affidavits of other counsel in the relevant community, and by providing case law examples of the relevant community rate. *Cortes v. Metro. Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005). "Once the fee applicant has proffered such evidence, the opposing party must produce its own affidavits or other evidence to rebut the proposed rate." *Id.* (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

First, ASC submits a declaration indicating that Gordon E. Gray of Mandour Law has practiced law in California for nearly three decades, focusing primarily on intellectual property litigation. (Gray Decl. ¶ 3.) Attorney Gray bills this case at a rate of $425 per hour. (*See* Lila Decl. Ex. 1 ("Mandour Billing Record").) The Court finds this rate to be reasonable in light of Gray's skill and experience.

Second, ASC submits a declaration indicating that Ben T. Lila of Mandour Law has appeared in more than 500 intellectual property actions before both the U.S. District Court and the United States Patent & Trademark Office, Trademark Trial and Appeal Board over a sixteen-year career. (Lila Decl. ¶ 3.) Attorney Lila bills this case at a rate of $355 per hour. (*See* Mandour Billing Record.) The Court finds this rate to be reasonable in light of Lila's skill and experience.

Finally, ASC submits a declaration indicating that prior counsel, Jana Gouchev of Gouchev Law, has twelve years of experience as an intellectual property attorney. (Lila Decl. ¶ 8.) Attorney Gouchev billed this case at a rate of $525 per hour. (*See* Lila Decl. Ex. 2 ("Gouchev Billing Record").) The Court notes that Vida does not object to the admissibility of ASC's evidence about Attorney Gouchev, and the Court finds Gouchev's rate to be reasonable. *See Blumenthal Distrib., Inc. v. Gamesis, Inc.*, No. 5:22-cv-01307-SPG (JCx), 2022 WL 17620222, at *10 (C.D. Cal. Dec. 12, 2022) (awarding Lanham Act attorneys' fees based on $875/hour for an attorney with 40 years of experience and $485/hour for an attorney with 8 years of experience); *see also Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) (finding rates of $750 to 975 for partners was reasonable).

  *2. Reasonable Hours Expended on Litigation*

Having determined the hourly rates to be reasonable, the Court now considers whether the amount of hours ASC's attorneys billed, a total of 120.3 hours in this case, is reasonable. (*See* Mandour Billing Record; Gouchev Billing Record.)

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Moreover, in determining the number of attorney hours for the purpose of the lodestar calculation, "the district court may exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). In addition, courts may reduce block-billed hours because block billing makes it difficult for the court to determine the amount of time spent on a particular assignment. *See id.* at 948.

ASC submits an itemized billing statement with 202 detailed time entries totaling 107.4 hours of work performed by Attorneys Lila and Gray. (Mandour Billing Record.) ASC also submits the billing statement of Attorney Gouchev

containing 11 itemized activities totaling 12.9 hours of work. (Gouchev Billing Record.) Vida takes issue with ASC's showing, but Vida does not provide any evidence of its own to rebut ASC's showing that the number of hours billed is reasonable. (*See* Opp'n 7.)

Having reviewed the billing records and considered the parties' arguments, the Court does not find that any of the claimed hours are excessive, redundant, or otherwise unnecessary. The Court also finds no instances of impermissible block billing and no other reason to reduce the number of claimed hours. Accordingly, the Court awards attorneys' fees based on the hours billed and requested by ASC, with no reductions.

Finally, ASC requests that the fees include an additional $10,000 to prepare the present motion, a reply, and appearance before the Court for oral argument. (Mot. 8–9.) The Court finds the requested amount to be unreasonably high, and moreover, the Court did not hold a hearing on this Motion. Based on these observations, the Court awards attorneys' fees in connection with the present Motion in the amount of $4,000, based on a lodestar calculation of ten hours at $400/hour. This corresponds to a reduction of $6,000.

In summary, the Court reduces ASC's attorney fee request of $61,607 by $6,000, resulting in a final attorney fee award of $55,607.

///
///
///
///
///
///
///
///
///

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** ASC's Motion for Attorneys' Fees and awards ASC **$55,607** in attorneys' fees. (ECF No. 54.)

**IT IS SO ORDERED.**

July 14, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**